## Case No. 1,100.

### BATES v. DRURY.

[4 Mason, 118.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1825.

CUSTOMS DUTIES—FEES OF COLLECTORS.

Where a collector's term of office expires under the act of 1820, [3 Stat. 582,] he is entitled to one half of the commissions upon bonds taken by him and then outstanding, and collected by his successor, as being a case within the equity of the [tariff] act of 1799, c. 129, [Bior. & D. Laws; 1 Stat. p. 704, c. 23.]

At law. Assumpsit [by Barnabas Bates against Luke Drury] for money had and received. Plea, the general issue. At the trial it appeared that the defendant was collector of the customs for the port of Bristol; and the plaintiff was his immediate predecessor in that office. The plaintiff was not removed from office, but his commission expired according to the provisions of the act of 15th of May, 1820, c. 102, Bior. & D. Laws; 3 Stat. 582,] the senate having refused to ratify his reappointment. The suit was for commissions upon bonds for duties taken by the plaintiff while in office, and outstanding at the time his commission expired, and since collected and received by the defendant. It was admitted, that the sums due for commissions on these bonds were in the hands of the defendant, and not claimed by the government.

Bridgham for the plaintiff, and Searle for the defendant, submitted the cause shortly on these facts, and a verdict was taken for the plaintiff for $681.93, being half the commissions, subject to the opinion of the court. It was afterwards delivered as follows.

STORY, Circuit Justice. Upon consideration we are of opinion, that the verdict for the plaintiff ought to stand. Before the act of [May 15,] 1820, c. 102, [Bior. & D. Laws; 3 Stat. 582,] the collectors held their office, without limitation of time, at the pleasure of the president. That act cut down the term of office to four years. The act of 2d of March, 1799, c. 129, [Bior. & D. Laws; 1 Stat. p. 704, c. 23,] provided for the only cases, except removals, in which one collector could take the bond, and another receive the money. The cases of death and resignation were expressly provided for; the case of removals, being presumed to be for good cause, was probably not thought fit, upon motives of policy, to be embraced in any universal rule. The act, in the second section, gives

a commission to collectors of a certain percentage "on all moneys by them respectively received on account of the duties arising on goods &c. imported into the United States, and on the tonnage of ships and vessels." This section attaches the right to the receipt of the moneys, and of course would seem to give the whole compensation to the collector who receives, and to him only. But it is obvious, that great injustice and inequality would arise from such an universal provision. The collector who takes the bond, and does the other incident duties on the importation, incurs a great responsibility. He may be made liable for any loss occasioned not merely by malfeasance, but by negligence in taking the bond, as by taking insufficient sureties, by mistakes of calculation, by omissions in the bond, &c.; and the receiving collector may have incurred only the slight responsibility of a safe custody of the money after it was received. A rule that should always give it to the latter, excluding the former, would therefore be inequitable. It would deny compensation where there had been service, and give it for a service very slight. Under such circumstances the court would, if the section stood alone, be driven to the conclusion, either that this hardship was intended by the legislature, or that the section contemplated only cases where the same collector took the bonds and received the moneys. My own opinion would incline to the latter construction. But the fourth section, in cases of death and resignation, divides the commissions equally between the predecessor, or his representative, and the successor. This furnishes an equitable rule, applicable to all the cases, to which any distinct legislative policy could be presumed to apply before the act of 1820. We think the case of an expiration of the term of office under this last act falls within the equity of the act of 1799, or at least, that it furnishes the true rule to govern the court, in what we deem a casus omissus. The government interposes no objection to the allowance of these commissions; the fund is in the hands of the defendant, and may be justly considered as a sum left by the government to be distributed between the two collectors according to their proportion of services. Each has performed some service; each is entitled to some compensation; neither can justly claim the whole. Ex aequo et bono the money ought to be apportioned between them; and the act of 1799 having furnished a rule in analogous cases, we apply it to the present case, and affirm the verdict, because it has made an equal division between them. Judgment accordingly.

---

[1] [Reported by William P. Mason, Esq.]